## HUNT v. ROBINSON et al.

T commenced suit against J by attachment; the writ was levied upon certain per-
sonal property by the plaintiff H, as Sheriff. M J, wife of J, claimed the property
as a sole trader and brought her action of replevin for the property and obtained
possession of the same by the delivery of an undertaking as required by sec. 102
of the code. The undertaking was executed by defendants R & S. The replevin
suit was decided February 5th, 1855, in favor of H. T obtained judgment in the
attachment suit against J, November 30th, 1854. On the eighteenth of February,
1855, executions in favor of other creditors of J, coming into the hands of H as
Sheriff, he levied them on the same property and subsequently sold the property and
paid the proceeds into Court. H then brought this suit against the sureties in the
replevin bond : Held, that the lien of T's attachment continued after the replevy
of the goods by M J.
When the same property came into the hands of H as Sheriff, the condition of the
replevin bond, to return the property, was fulfilled.
The primary object of the replevin suit is, the recovery of the thing itself. The
value is received only in the alternative, that the property is not returned.
The possession obtained by the plaintiff in replevin is only temporary. It does not
divest the title or discharge the lien.
In an action on a replevin bond, the defendant's liability is limited to the damage
sustained by a failure to return the property.

APPEAL from the District Court of the Sixth Judicial District,
County of Sacramento.

This was an action against the sureties on a replevin bond. The
facts as detailed in the opinion of the Court are as follows :

Treadwell commenced suit against David Jones, by attachment,
which was levied upon certain personal property by the plaintiff, Hunt,
as Sheriff of Sacramento county. Mary Jones, wife of David Jones,
claimed the property as a sole trader, and commenced her action of
replevin, and obtained possession of the property, upon delivering an
undertaking as required by the 102d section of the Practice Act,
executed by defendants, Robinson & Skinker. The replevin suit was
decided on the fifth of February, 1855, in favor of Hunt, and a motion
made for a new trial by Mrs. Jones, which motion was pending until
ninth March, 1855, when it was overruled. Treadwell obtained judg-
ment against David Jones, November 30th, 1854, for $4,300. On
the eighteenth of February, 1855, certain executions in favor of other
creditors of David Jones, being in the hands of the plaintiff, Hunt,
were levied by him upon the same property, and the property sold
about the last of February. The Sheriff, being in doubt as to which
of the several creditors were entitled to the proceeds of the sale, paid

the money into the Sixth District Court, and filed his bill of inter-pleader, making Treadwell and the other creditors, parties.    Upon the hearing, the District Court decided that the second class of creditors were entitled to the proceeds.    From this decision no appeal was taken by any party.    On the seventeenth March, 1855, Hunt issued his execution upon the judgment obtained by him in the replevin suit, which was returned by the Coroner unsatisfied.    The Sheriff then brought his suit against the sureties in the replevin bond, and obtained judgment against them for the assessed value of the property replev-ied, and for costs, and the defendants appealed to this Court.

The main question arising in this case, is whether the lien of Tread-well's attachment continued *after* the replevy of the goods by Mrs. Jones.

*Robinson, Beatty & Botts, Clark & Gass* for Appellants.

Mrs. Jones, as determined by the result of the replevin suit, had no title to the furniture, and therefore could not have conferred title upon a purchaser.    She could not confer what she did not herself possess.

In the language of the Chief Justice in the case of Burckle *v.* Luce, 1st Comstock, on p. 171, she had a mere temporary right of possession, which expired upon the termination of that suit against her, and this is the only right which she could have transferred to a pur-chaser.

But, says respondent's counsel, our law looks upon the possessor of personal property as its owner.

It is true, possession is *evidence* of ownership, but it is *prima facie* only, not conclusive evidence.    Mrs. Jones was in possession and for the time ·being entitled to the possession of the furniture ; she could confer upon a purchaser no higher title than she possessed.

The case of Lockwood *v.* Perry, 9 Metcalf 444, is directly in point, and establishes two of the points contended for by appellants :

1st. That Mrs. Jones could not sell the property attached, and make a title thereto, during the pendency of the action of replevin ; and if she could not sell, she certainly could not give it away in payment of debts not her own, as that would be a fraud upon her sureties.

2d. That Hunt, the real owner, or having all the interest of the real owner, could not *lawfully* disturb her right of possession during the pendency of the action of replevin, and therefore could not levy upon it in favor of other creditors of David Jones.

We further contend on behalf of the appellants, that the lien of the first attachments still remained upon the property ; and that although bonded under the statute, it was still in the custody of the law, and could not be levied upon by any officer, nor sold by her.

In 1st Barnes, Chy. 427 ; in 2d Dallas, 68 ; in Acker *v.* White, 25th Wendell, 614, and in some other cases, the Court, it is true, says the lien is discharged upon the execution of the replevin bond ; while in Rives, &c. *v.* Owen, 6th Alabama, 46 ; Hagan *v.* Lucas, 10th Peters, 400 ; McRea, &c. *v.* McLean, 3d Porter, 138, and various other cases in Kentucky, Missouri, &c., it is held that notwithstanding the execution of the bond, the lien of the attachment still exists, and that goods so replevied cannot be levied upon or sold to satisfy other debts.

This peculiarity, however, will be observed in all the cases cited and relied upon by respondent's counsel, that although the Courts say the lien is gone, yet they arrive at the same conclusions to which those Courts arrive who hold that the lien continues ; while following the language in 1 Brown's Chy., that the lien is gone, and thus yielding *nominally* to the authority of that case, they avoid the consequences of fraud and corruption to which that doctrine would necessarily lead, as is fully exemplified in this case, by holding that the plaintiff in replevin is substituted to all the rights of the Sheriff, and that the property thus replevied is not subject to levy and sale under any other execution.

In that case, White, claiming title, replevied the property out of the possession of Hillyer, Sheriff.

In this case, Mary Jones, claiming title, replevied the property out of the hands of Hunt, Sheriff.

In that case, after judgment, but pending a motion for a new trial, Acker, as Sheriff, under an execution against Jessup upon another judgment, levied upon the same property.

In this case, after judgment, but pending a motion for a new trial,

Hunt *v.* Robinson.

Hunt, as Sheriff, under an execution against David Jones upon another judgment, levied upon the same property.

The only difference between the two cases thus far, is this : that in the case of Acker *v.* White, the second execution was levied by a different officer ; while in this case the two levies were made by the same officer, who must therefore have had actual notice of the first levy when he made the second.

Now, if Hunt could acquire no new title to the goods, by virtue of his second levy, he could only sell and dispose of the same in one of two ways ; either, 1st, by virtue of his first levy, and in satisfaction of the debts to secure which that levy was made ; in which event the condition of this bond would have been substantially complied with, and no action for a return could have been maintained upon it; or 2d, he must have sold them in his own wrong.  The law permits no man to take advantage of his own wrong, and in neither event therefore can any suit be maintained upon the bond for a return of the goods.

But according to the third proposition of the Court in Acker *v.* White, and according to every principle of law and justice, if the appellants are compelled to pay the value of these goods, they will be entitled to the goods themselves.  It is conceded, however, that they cannot get the goods, the respondent having sold them; and therefore, should the judgment of the Court below be permitted to stand, they would be compelled to pay for the goods and never enjoy the benefit of them.

Another case cited and relied upon by respondent's counsel, is the case of Burckle *v.* Luce, 1st Comstock, 163, and in this case we apprehend the counsel is more unfortunate even than in Acker *v.* White.

In this case Mrs. Seitz sued Luce in replevin for certain goods which he had levied upon as the property of Burckle.  Upon giving the requisite bond, the goods were placed in her possession.  A verdict was found for defendant, Luce, which was set aside and a new trial ordered.  Before a new trial was had Mrs. Seitz died, and defendant, Luce, repossessed himself of the goods, and claimed to hold them by virtue of his first levy.  Burckle and another, the executors of Mrs. Seitz, brought a second action of replevin against Luce for the goods ; and upon the trial of this second action, asked the Court to instruct

17

the jury, " that the execution of the writ of replevin brought by Mrs. Seitz, destroyed the lien of the *fi. fa.*, and the defendant had no right to retake the property ;" but the Court refused to give the instruction, and judgment went for the defendant, which on appeal was affirmed—thus denying the doctrine, that the lien of the levy is gone upon the execution of the bond in replevin.

In this case of Burckle *v.* Luce the Court reviews each of the cases cited by respondent's counsel, to wit: Bradyll *v.* Ball, 1 Bro. Chy., 427 ; Waglam *v.* Cowperthwaite, 2d Dallas, 68 ; Frey *v.* Lupee, 2d Dallas, 131, and Acker *v.* White, 25th Wendell, 614.

In further support of this position we refer the Court to the case of McRea *v.* McLean, 3 Porter, 138.

That portion of the argument of respondent's counsel (in favor of the position that the lien is gone upon the execution of the replevin bond) which is drawn from our attachment law, is exceedingly lame and unfortunate.

It is true, that under our attachment law, upon the execution of certain bonds by the defendant in attachment, the law provides that the property shall be released from the attachment.    This provision of the attachment law is founded upon the same principle which controlled the decision of Bradyll *v.* Ball, Waglam *v.* Cowperthwaite, and other cases cited by respondent's counsel, in which the lien was held to be discharged upon the execution of the replevin bond, to wit : that the defendant in attachment is the general and real owner of the goods.    In suits by attachment there is no controversy as to the ownership of the attached property ; and therefore, upon giving other and adequate security for the payment of the debt, the goods attached are released—the only question being whether the defendant is or not indebted to the plaintiff.

But in the action of replevin an entirely different issue is presented —the title to, or the right to the possession of personal property—and the whole object of our statute in relation to the claim and delivery of personal property is to retain the control of it, that upon the determination of the suit the rightful owner may be placed in possession. While the object of an attachment is simply to secure the payment of a debt, which object is as well or better obtained by a deposit of money .

in the Court, the action of replevin is more in the nature of proceedings *in rem*, the chief object being the delivery of the property itself to the rightful owner, and only looks to the alternative of payment of its value when such delivery cannot possibly be made.

Respondent's counsel attempts to draw a distinction between the bond given in this case, and the bonds under consideration, in the cases relied upon by us, and says that two kinds of bonds have obtained in different States.   One, a bond dissolving the attachment, and conditioned for the payment of such jugdment as shall be recovered in the suit.   The other, a bond variously styled a delivery, forthcoming or replevin bond, conditioned for the redelivery of the property to satisfy the execution, or more generally in the alternative, to redeliver the property *or* to pay the judgment.

In Drake on Attachment, we find that chap. 13th treats exclusively of these two kinds of bonds.   He says: "In many of the States provisions exist, authorizing the attachment to be dissolved, upon the defendant giving bond, with approved security, for the payment of such judgment as may be recovered in the attachment suit."   (Section 290.)   This bond does not provide for a return of the property, but that the sureties will pay the judgment; and in section 297 he says "the obligation of this bond cannot be discharged by a surrender of the property attached," and therefore it is that the execution of such a bond dissolves the attachment.   This is the kind of bond provided for in our statute, in cases of attachment—"that the sureties will on demand pay to the plaintiff the amount of judgment, &c.;" not that they will return the property or pay the judgment. (Secs. 136, 137, Practice Act) Drake on Attachment, secs. 299, 303.

*J. P. Treadwell* for Respondent.

Property attached and replevied out of the hands of the officer, by a third person having no property in it, remains, after so replevied, liable to be seized on subsequent executions against the defendant in each attachment, he being owner thereof before forfeiture of the replevin bond; and in such case, the lien of the attachment on the property was discharged, when it was taken out of the hands of the officer on the writ of replevin.

The process of mesne attachment, as a security for final judgment, is unknown to the common law. It is a new statute remedy and is to be strictly construed. The lien of an attachment has just the extent given to it by the statute providing for it, and no other, and cannot be extended to cases not provided for by the Act. 1 Cal. 163; 3 Cal. 365; 2 Cal. 24; 15 Mass. 205. The extent and duration of the lien in this State depend then on our own statute, to be strictly construed, and are not helped by any general principles.

Our statute provides that "personal property capable of manual delivery shall be attached by taking it into custody;" Prac. Act, sec. 125; and this is usually required whenever mesne attachments are allowed. And the attachment can be preserved only by keeping possession—must be actual, though it need not be by the hand of the officer himself. He may substitute a third person to be his custodian, servant or bailee, to keep this custody for him.

The attachment on property delivered to him, is preserved only so long as the bailee keeps the actual custody; for if the bailee permit the goods to go back into the hands of the defendant in the attachment, as is usually the case, and the custody thereby be lost, the lien of the attachment is lost and the goods become liable to a fresh attachment, or seizure at the suit of another creditor of the owner. Drake on Attachment, secs. 315, 328; 14 Mass. 190.

But a means is provided by statute everywhere, where mesne attachments are allowed, for the defendant to regain the possession of his goods, on giving security, without waiting final judgment. One of two different courses of public policy is adopted in providing for this in the statutes of each State : *either,*

1. A bond dissolving the attachment, and conditioned for the payment of the amount of such judgment as shall be recovered in the attachment suit; or,

2. A bond variously styled a delivery, forthcoming, or replevin bond, conditioned for the redelivery of the property to the officer to satisfy the execution, or when the Court may direct; sometimes in the alternative to redeliver the property or pay the judgment in the attachment suit. And it is also given to enable an execution debtor to retain possession of his property levied upon until the day of sale;

the condition being in such case for the redelivery to the officer at the time and place of sale. A bond of the first description is provided for by the statutes of *California*, Maine, Massachusetts, New York, Louisiana, &c.; of the latter description,. on the other hand, by the statutes of Alabama, Missouri, Virginia, &c. In each case the goods attached are released from custody ; in the first, the attachment is released ; in the latter, the custody only for the goods levied on or attached, the lien of the attachment usually continuing. But this difference depends, not on the difference in the words of the conditions of the bond, but upon the intent and object of the statute in each case in providing for the proceeding.

Only one of these two different courses of statute policy pertains in any one State; and there can be no mistaking which California has adopted. A defendant may apply for " the *discharge* of the attachment, on filing an undertaking to pay the judgment ;" and " if the application be granted, all the property attached shall be released from the attachment and delivered to the defendant." Laws, C. 543, sec. 136.

It will only be necessary to show that we are not mistaken in the character of the decisions so cited and relied on by the other side. The opinion of the majority of the Court in M'Rea *v.* M'Lean, 3 Port. 138, is : " That the giving a replevin bond *under the attachment law of Alabama* does not discharge the lien first acquired under the attachment ;" and this is there put on the ground that " there is no difference in principle between the Act of 1818, under which the case arose, and the Act of 1833, which goes farther, and directs the Sheriff to suffer the property attached to remain in the possession and at the risk of the defendant." The other determinations in that Court relied upon are of the same character ; but the case, 6 Alabama, 45, had decided the same point differently. The case of Lord *v.* Ramsey, 3 Mun. 417, was merely constructive of the intent of the statute of Virginia, in providing that property levied on might be retained by the owner, on giving bond for its forthcoming on the day of sale. Evans *v.* King, 7 Mo. R. 413.

The decision in Hagan *v.* Lucas, 10 Pet. 400, relied upon by appellants, was upon a statute of Alabama, and *governed* by the above

noticed case of M'Rea *v.* M'Lean, the case, 3 Mun. 417, being cited in aid. The Court says: " In a late case (3 Pet. 138) the Supreme Court of Alabama *decided the same question which is made on this bond,* on a bond given for the delivery of property under the attachment law of that State. They decided that the giving of the bond did not release the goods from the lien of the attachment. A contrary decision had been given by the Court in a similar case; but on further examination, and more mature reflection, two of the three Judges made the above decision. This adjudication being made on the construction of a statutory proceeding, and by the Supreme Court of the State, forms a rule for the decision of this Court." "In fact, the bond under the Alabama statute is substantially a forthcoming (and not a replevin) bond." " *The object* of the Legislature in requiring this bond was to insure the safe-keeping and faithful return of the property to the Sheriff, should its return be required." The cases in 12 Sunder and M. and 6 Ala. 45, were also under the same statute.

The decisions are wholly inapplicable for the appellants. Admitting that they are the true expositions of the several statutes upon which, and in accordance with the policy of the States where they were made; yet they are of no weight against the corresponding provisions of our own law for the delivery of attached property to the defendant, that the attachment " shall be discharged."

It is nowhere contemplated by — the legislation of Alabama and Missouri finds no favor in — our statutes, that the lien of an attachment in any case survives a moment after the property passes by any means whatever out of the custody of the attaching officer. The contrary is everywhere implied.

If the levy of Mills and others be sustained, Treadwell and Argenti are sustained in this resort to the replevin bond against those who have enabled the property to be taken from the hands of the officer on a false claim; if it be decided that the lien of the first attachment continued after and *must be pursued,* then Mills and others have been successfully imposed upon by a secret lien or mortgage.

Dormant executions have ever been rigorously proscribed, and the priorities of their liens denied by the Courts as constructively fraudu-

lent by mere delay, even where there is no concert or fraudulent intent. Kellogg v. Griffin, 17 J. R. 277 ; Knower v. ——, 5 Hill, 377 ; Kimball v. ——, 2 Hill, 364 ; Rice v. ——, 7 Modern, 37.

It seems adjudged so early as 7 H. 4, (28) that where goods lawfully distrained for rent, and replevied, are seized and sold under execution against the plaintiff, this is a sufficient answer to a call on the defendant to gager deliverance. Vid. Vine. 18, p. 588, (H.) Gager on Withernam.

Bradyll v. Ball, 1 Brown's Ch. R. 427, a leading case on the point now pursued, was decided on the unanimous opinion of the King's Bench, upon much consideration, and after argument by eminent counsel. The goods of a tenant were distrained for rent ; he replevied them, giving a replevin bond, and pending the replevin suit he became a bankrupt, and the goods passed into the hands of his assignee. The landlord, the defendant, afterwards recovered a judgment in the replevin suit for a return of the goods. The goods had been sold by the assignee ; and the landlord now brought a suit in equity against him, insisting that he retained a lien upon the goods by the distress after they were replevied, and when they went into the hands of the assignee, and had an equitable lien for a return, or the payment of the value of them out of the assets of the bankrupt. The Court of Chancery decided that there was no lien in equity if not at law, and directed an action at law against the assignee for money had and received to be brought, retaining the bill. The suit was brought accordingly ; and the King's Bench were unanimously of opinion that the plaintiff had no lien upon the goods after they were delivered upon the writ of replevin, and that he was left to his remedy upon the replevin bond ; and upon this the bill was dismissed.

" If the landlord distrain and the tenant replevy the goods, and afterwards becomes bankrupt, and the goods are sold by the assignees, and the defendant in replevin afterwards have judgment for a return, his only remedy is on the replevin bond, for he has no lien on the goods in the hands of the vendee." Brady on Distresses, p. 123 ; cites Cooke R. 219, 220 ; Waglam v. Cowperthwaite, 2 Dal. 68.

In Fry v. Leeper, 2 Dal. 131, this last decision is relied on ; and the same Court decides : " The lien on the goods is discharged by the

security given to the Sheriff; and as soon as they are delivered back to the plaintiff in replevin they are open to execution or distress." Buel v. Davenport, 1 Root R. 261.

In Acker v. White, 25 Wend. 614, it is said : " The replevin puts no end to the lien. *    *    The bond is substituted for the goods. *    *    Although the lien of the execution is gone, according to the cases cited, (1 Br. R. 427 ; 2 Dal. 68) it is because the bond is regarded as an equivalent security for satisfaction of the judgment to the extent of the value of the goods."

These decisions are stated and acquiesced in, though not the precise point before the Court, in Burckle v. Luce, 1 Comstock, 163 ; and 6 Hill, 557.

The opinion in this case was rendered at the October Term, 1857. Subsequently a reargument was had, and at the July Term, 1858, the Court refused to recede from its former opinion.

BURNETT, J., after stating the facts, delivered the opinion of the Court—FIELD, J., concurring.

The property having been attached as the property of David Jones by the Sheriff, the questions arising in this case are different, in some respects, from those arising in ordinary actions of replevin. In ordinary cases the property is not in the custody of the law by virtue of process, but in the possession of one of the claimants, each party claiming in his *own* right. In this case the Sheriff did not claim the property in his personal, but in his official capacity. He traced his only right to the property through Treadwell's attachment.

In the case of Bradyll v. Ball, 1 Brown's Ch. R. 375, it was held that where goods had been taken in distress for rent, and replevied by the tenant, the defendant in the suit and the owner of the goods, the distrainor had no lien on the goods, but was left to his remedy on the replevin bond. This decision was concurred in by the unanimous opinion of the Court of King's Bench.

So in the case of Waglam v. Cowperthwaite, 2 Dallas, 68, it was held by the Philadelphia Court of Common Pleas that the landlord, after the goods had been replevied by the tenant, had no lien upon

them, but the sureties upon the replevin bonds were substituted in the place of the goods.   The same point was held in a subsequent case, page 131.

In the case of Acker *v.* White, 25 Wend. 614, it appeared that Hillyer, as Sheriff, had levied upon certain goods as the property of Jessup, the defendant in the execution.   White claimed the property as his own, and sued out a writ of replevin, executed the necessary replevin bond, and the property was delivered by the Coroner to White, who permitted Jessup to continue in the possession of it. Afterwards Acker, as Sheriff, levied upon the same goods under another execution against Jessup.   White then sued Acker, and it was held that White had the right to the property.   The Court decided that the lien of Hillyer's execution was lost, by the replevin suit in the case of White *v.* Hillyer; but that White possessed all the interest that Hillyer had under the execution, and if that was sufficient to defeat the subsequent levy by Acker, then it must equally inure to the benefit of White.   The plaintiff in replevin, White, by virtue of replevin bond, was substituted to the rights of Hillyer, the Sheriff.

It will be perceived that the facts of that case are very similar to the circumstances of the case now under consideration.   They are substantially the same, except in one important respect.   In the case from Wendell the second levy was made *against* the will of the claimant in replevin, while in the present case, the levy of the second class of executions was made *with* the consent of the claimant.

If then, the lien of Treadwell's attachment was lost by the replevin suit of Mrs. Jones against the Sheriff, then she had the right to permit the second levy, and the Sheriff must seek his remedy upon the replevin bond.   It must be conceded that this case of Acker *v.* White is a direct authority for the plaintiff, if it be admitted that the laws of New York were then substantially the same as the provisions of our Practice Act.

But in the subsequent case of Burckle *v.* Luce, (1 Com., 163) the Court of Appeals seem to have virtually overruled the decision in the case of Acker *v.* White.   At least it would seem clear, that in the case of Burckle *v.* Luce, the Court lays down principles, that if legiti-

mately applied, must overrule the position that the lien of the writ was lost by virtue of the undertaking in replevin.

The defendant, Luce, as Deputy Sheriff, levied upon certain property under an execution against Burckle.   Mrs. Leitz claimed it, and brought replevin and obtained possession of the property.   Before the replevin suit was finally determined, Mrs. Leitz died, leaving a will, appointing the plaintiff as her executor.   It was held that the suit abated by the death of Mrs. Leitz, and the lien of the execution revived.

"In my opinion," says Jewett, C. J., "the proceedings upon the writ of replevin conferred upon Mrs. Leitz a mere temporary right of possession, which expired with the abatement of the suit by her death, and that, when that event occurred, the lien of the execution revived; especially as the rights of no third person had intervened, under her, and the defendant was at liberty to retake the property by virtue of his former levy."

The learned Chief Justice refers to and approves of the opinion in the case of Lockwood *v.* Perry (9 Metcalf, 440).

In that case it appeared that Lockwood was in possession of two colts, which he claimed as his property.   Barnes also claimed them, and brought replevin, and gained possession of the property.   Lockwood ultimately prevailed in the replevin suit; but while it was pending, Barnes sold the colts to Perry.   Lockwood brought suit against Perry and recovered the property, as it was held that Perry acquired no property by his purchase from Barnes, who had no title himself; and in the opinion of the Court it is said :

"It is doubtless true that the plaintiff in replevin has, by virtue of his writ, acquired the right of possession pending the action of replevin, and that the real owner cannot lawfully disturb that right during the pendency of that action, nor institute an action against a third person who may become possessed of the goods.   And this is precisely the extent of the right exercised by force of a writ of replevin."

In the case of McRea & Augustin *v.* McLean (3 Porter, Ala. R. 138) the authorities were very fully considered.   Watson attached certain slaves, the property of Thomas J. Augustin, and he replevied the property by giving the usual bond, with the plaintiffs as sureties,

conditioned for the return of the goods, or the payment of any judgment rendered in the case.  Suit was brought upon the bond, and the defendants in the Court below pleaded that while the Sheriff held the said slaves in his possession, at the suit of sundry other creditors against said Thomas J. Augustin, commenced by attachment, the defendants requested and notified the Sheriff to retain the slaves in his custody under the attachment of Watson, and that the Sheriff afterwards delivered the slaves to one Josiah Haice, who eloined and removed them from the State."  The case was twice argued before the Supreme Court of Alabama, and it was finally held that the sureties were discharged, upon the ground that the giving of the attachment bond did not destroy the lien of the writ of attachment, and therefore, the Sheriff was bound to have retained the slaves under Watson's attachment.  The Judge who delivered the opinion of the Court holds this language :

" That the property is to be at the risk of the debtor and his sureties pending the suit, I admit.  That they should then have the previlege of returning it, the bond expressly stipulates ; and that no principle of law, which will permit any other disposition of it, inconsistent with the lien, is to be tolerated, I do not hesitate to maintain."

The Chief Justice dissented from this opinion, but the principle was afterwards affirmed in the case of Rives & Owen *v.* Wilbame, 6 Ala. R. 45.

In the case of Evans *v.* King (7 Mo. R. 411) it was held, that where property of a defendant, attached in the hands of a third party, is retained by that person by giving bond and security for the forthcoming of the property, the attachment continues to be a lien on the property.

In the case of Hagan *v.* Lucas, 10 Peter's, 400, it appears that several executions against Bynum & McDade were levied by the Sheriff upon certain slaves, on the 10th of October, 1833, and that Lucas claimed the property as his own, and gave bond and security to the Sheriff, for the forthcoming of the slaves if they should be found subject to the executions, and for all costs and charges for the delay, &c.  The slaves were then delivered to Lucas, and the proceedings were returned to the Circuit Court of Montgomery county, Alabama.

An execution was afterwards issued against Bynum & McDade, upon a judgment against them in the District Court of the United States for the Southern District of Alabama, and levied upon the same slaves, still in the possession of Lucas, on the 19th of February, 1834. It was held by the Supreme Court of the United States, that the lien under the first execution continued, and that the property was still in the custody of the law, and not subject to a second levy, to the prejudice of the first. Mr. Justice McLean, in delivering the opinion of the Court, said : " On giving the bond the property is placed in the possession of the claimant. His custody is the custody of the Sheriff. The property is not withdrawn from the custody of the law. In the hands of the claimant, under the bond for its delivery to the Sheriff, the property is as far from the reach of other process as it would have been in the hands of the Sheriff."

In this case, it is true, the Court places its decision upon two grounds : 1st, upon its own view of the law; 2d, upon the ground that the construction of a statute of a State by the Supreme Court thereof forms a rule of decision for the Federal Courts.

The result of the authorities is very accurately stated by Mr. Drake, in his late work on Attachments, sections 290, 299, 303.

" In many of the States," he says, " provisions exist, authorizing an attachment to be dissolved, upon the defendant giving bond, with approved security, for payment of such judgment as may be recovered in the attachment suit."

Such, in substance, is the bond required by the 137th section of the Practice Act. This is the bond to be given by the *defendant* in the attachment suit, not by the *claimant* of the property.

The author then treats of another class of bonds, and says, " this description is variously styled delivery, forthcoming or replevin bond. It is usually conditioned for the delivery of the property to the officer, either to satisfy the execution which the plaintiff may obtain in the cause, or when and where the Court may direct. Sometimes the alternative is embraced, of the delivery of the property or the satisfaction of the judgment recovered in the action."

In speaking of this description of bond, he says : " It differs, too, from that given for dissolving an attachment, in that it does not dis-

charge the lien of the attachment, since the very object of the bond is to insure the faithful return of the property, if its return should be required."

It will be readily seen that this description of bonds, and the bond required in replevin suits prosecuted in this State, are substantially the same; the condition of the latter being "for the prosecution of the action, for a return of the property if return thereof be adjudged, and for the payment of such sums as may from any cause be recovered." The judgment in a replevin suit follows the verdict of the jury and the condition of the undertaking, and is in the alternative "for the possession of the property, or the value thereof in case a delivery cannot be had, and damages for the detention. Either party may, or may not, claim damages for the detention of the property." Sections 177, 200. The execution on the judgment commands the Sheriff, first, to deliver the possession of the property, if it can be found, and if not, then to make the value of the property out of the personal and real property of the party against whom the judgment is given. Sec. 210.

That the effect of a replevin bond under our statute is not to divest either the title or the lien of the other party, would seem to be clear. The contest itself is about specific personal property. The recovery of the thing itself, and not damages in lieu thereof, is the primary object of the suit. The value is recovered only as an alternative, when delivery of the specific property *cannot be had*. The property is required to be particularly described in the execution.

Now, if the title could be divested by the delivery of the replevin bond, the primary object of the suit could be defeated. The unsuccessful party could always make his election to keep the property or pay the value. But this advantage was never intended to be given by the statute, to the party confessedly in the wrong.

The effect of the replevin bond is simply to give the party the possession of the property pending the litigation. The title is not changed. No sale made by the party in possession, and who afterwards turns out to have no right to the property, can convey any title to the purchaser. And if the title is not changed, as was held in the cases already cited, especially in that of Lockwood *v.* Perry, neither

could the lien be affected in any way.   The language of our statute is very strong.   The Sheriff is commanded to deliver the possession of the property particularly described in the execution, and if a delivery *cannot* be had, then to make the assessed value.   There is no reservation anywhere in favor of innocent purchasers.   The property remains in the custody of the law, and all parties must take notice. It is certain that the unsuccessful party may deliver the property and discharge himself from so much of the judgment as is made up by the assessed value.   The very reason why he may do this, is because the suit is about that specific property, and because the title is not affected by the replevin bond.   But where property attached is released upon *the bond* of the *defendant,* he cannot discharge himself, or his sureties, by a delivery to the Sheriff of the same property, for the reason that the lien is gone.   In the case of Nickerson *v.* Chatterton *et al.,* 7 Cal. 568, we held that " when the plaintiff or defendant in the original suit obtains judgment for the delivery of the property, or if it cannot be found, then for its value, the title in the property vests in the party against whom the judgment is given, subject to the right of the successful party, to take it in discharge of so much of the judgment as is made up by the assessed value of the property."

If the title did not vest in the unsuccessful party until the judgment in the replevin suit, of course it did not vest in him upon the delivery of the replevin bond.   And although the title vests upon the rendition of the judgment, the property is still subject to be taken by the successful party, until he makes his election to sue upon the undertaking in replevin.   He may sue without issuing execution.   But at any time before suit be brought, the successful party may take the property if to be found, and so too, the unsuccessful party may return it.

If the theory that the lien of the attachment is lost by virtue of the undertaking in replevin be taken as true, then it follows that the same property remains liable to seizure under any subsequent process against the same defendant.   The claimant and his sureties, who have stipulated for the return of the property, would then be left to pay the judgment in the replevin suit, while, at the same time, they would not get the property to compensate them for the judgment.   This would certainly place the claimant of property seized by an officer in

Hunt *v.* Robinson.

a worse condition than that of an ordinary trespasser.   When A takes the property of B, and the latter obtains judgment for the value of the property, if A pays the judgment he is entitled to the property. The law gives him the property for the judgment.   But if the theory of the plaintiff be true, the unfortunate claimant must pay the judgment, and still lose the property.   In claiming the property he assumes a double responsibility; while the defendant in the attachment or execution may be fortunate enough to obtain double the value of the property seized by the officer.   In reference to such a theory Mr. Justice McLean, in the case of Hagan *v.* Lucas, already referred to, makes these forcible remarks:

" If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond ; for a levy takes the property out of the possession of the claimant, and renders the performance of this bond impossible.   Can a result so repugnant to equity and propriety as this be sustained ?   Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the forfeiture ?   This would indeed be a reproach to the law and to justice."

But the theory that the possession obtained by virtue of the writ of replevin is only temporary, and does not divest the title or discharge the lien, is the most logical, and at the same time, the most just to all parties.   The party ultimately entitled to the property has a double security; while the party who replevies it does not incur the extraordinary risk of having to pay the judgment and also to lose the property.   And the defendant, in the attachment or execution, has no opportunity to obtain two prices for his property.

If these views be correct, the lien of the attachment continued, and when the same property came again into the hands of the Sheriff, the condition of the replevin bond, to return the property, was fulfilled. The property was then liable to a second levy, but such second levy was subject to the levy under the prior attachment.

For these reasons the judgment of the Court below is reversed, and that Court will enter up judgment in favor of the plaintiff for the costs of the replevin suit, and also for costs in this suit, and the defendants will be entitled to the costs of this appeal.