[Civ. No. 2863.   Third Appellate District.—March 23, 1925.]

# RAYMOND BISCONER, Appellant, v. F. T. BILLING et al., Respondents.

[1] ESTOPPEL—KNOWLEDGE OF FACTS.—There can be no estoppel *in pais* where the party against whom the attempt is made to invoke such estoppel does not know the full truth of the facts to which his conduct, declarations, or representations constituting the basis of the alleged estoppel relate.

[2] REPLEVIN—ACTION UPON BOND—SALE OF PROPERTY UPON EXECUTION — ASSISTANCE IN TRANSACTION — KNOWLEDGE — ESTOPPEL.— In an action upon a replevin bond, it is no defense that, after the property was taken by the sheriff in the replevin action, the defendant in said action co-operated with and assisted the purchaser of said property in connection with the purchase thereof at an execution sale thereof upon a judgment against the plaintiff in the replevin action, where the defendant in the replevin did not at the time know that the property in question was the same property which had been taken from his possession by the sheriff under the writ of replevin and delivered to the plaintiff in the replevin action.

[3] ID.—POSSESSION OF PLAINTIFF—DUTY TO KEEP PROPERTY IN CUSTODY.—The plaintiff in a replevin action, upon obtaining possession of the replevied property from the sheriff, by virtue of his undertaking, acquires the right to possession thereof and nothing more, and the property, while in his possession under his undertaking, no less than when in the possession of the sheriff by virtue of the writ of replevin, is *in custodia legis;* and it is the duty of such plaintiff to keep the property in his custody and to allow no one to divest him of the possession thereof upon any pretense or pretext whatever.

[4] ID.—SURRENDER OF PROPERTY PURSUANT TO ATTACHMENT—RIGHT TO RETAKE POSSESSION.—Where the plaintiff in a replevin action, after obtaining possession of the replevied property from the sheriff, by virtue of his undertaking, surrenders his possession of the property in response to the exactions of a writ of attachment in an action against himself, he is guilty of a flagrant violation of his engagement, not only to the defendant in the replevin action, but to the sureties on his undertaking, to retain possession of the property; and the deprivation of that possession constitutes a wrongful dispossession and a trespass, and he or his sureties,

1. See 10 R. C. L. 693; 10 Cal. Jur. 632.
2. See 10 R. C. L. 825.
3. See 5 Cal. Jur. 178.

by proper process in the replevin suit, can retake the property from the officer seizing it under the writ of attachment or from any other person having its possession by virtue of said writ.

(1) 21 C. J., p. 1123, n. 36.　(2) 34 Cyc., p. 1605, n. 69.　(3) 6 C. J., p. 212, n. 34.　(4) 34 Cyc., p. 1458, n. 73, 75.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Reversed.

The facts are stated in the opinion of the court.

G. W. Zartman for Appellant.

Feemster & Cleary for Respondents.

HART, J.—The plaintiff brought this action against the defendants as sureties on an undertaking executed by them in an action in replevin, in which one J. Tolosano was plaintiff and the plaintiff herein was defendant.

On the first day of March, 1921, said J. Tolosano brought an action in claim and delivery against Raymond Bisconer, the plaintiff herein, for the purpose of recovering the possession of a 25-Sampson sieve grip tractor and a No. 4 12-inch disc plow, said Tolosano claiming and alleging in his complaint that he was the owner of said property and that it was of the value of $2,000; that in said action of claim and delivery or replevin said Tolosano filed the affidavit required by section 510 of the Code of Civil Procedure, setting forth all the facts required by said section to be contained therein, and also a notice and demand upon the sheriff of the county of Tulare to take from said Raymond Bisconer, defendant in said action, the property above described; that, at the same time, said Tolosano executed an undertaking, with F. T. Billing and C. M. Meador, defendants herein, as sureties, in the sum of $4,000, conditioned for the return of said property, or the payment of its value, to said Bisconer in case it cannot be returned, if a return thereof to Bisconer be adjudged in said action; that said sheriff, in pursuance of said demand, took from said Bisconer said property, and, after retaining possession of the same for five days, no demand by Bisconer that possession of said property be restored to him within that time having been

made, the sheriff turned the tractor over to the plaintiff, who thereupon took it to the "Meador ranch," where Tolosano then resided; that, in the month of December, 1921, the action in claim and delivery was tried, and on the twentieth day of February, 1922, the court rendered judgment in favor of Bisconer, the defendant therein and plaintiff herein, for the return to him of said tractor and plow, or, in case said property was not returned, for the sum of $2,000, the value thereof. These facts are, with greater amplification, of course, alleged in the complaint herein, and are admitted by the answer, but the defendants, as in avoidance of the legal effect thereof, set up a special defense by way of a plea in estoppel, as follows:

" . . . that defendants are informed and believe and therefore allege the fact to be that during the pendency of the action in replevin mentioned and alleged in said complaint, and before the entry of judgment therein in favor of the plaintiff and against these defendants as alleged in said complaint, the said plaintiff, Raymond Bisconer, took possession of the personal property mentioned in Paragraph I of plaintiff's complaint, to-wit, the said No. 25 Sampson Sieve Grip Tractor and one No. 4 twelve-inch Disc Plow, and ever since has retained and does now retain the possession thereof; that by reason of the taking possession of said property by plaintiff as aforesaid, the defendants have been relieved of the obligation of returning said property as provided in the undertaking mentioned and referred to in plaintiff's complaint, and that by reason of such taking possession by plaintiff the obligation of said undertaking has been fully discharged."

In response to the special defense or the plea in estoppel so set up, the defendants brought out these facts: That subsequent to the time at which the tractor concerned here was delivered by the sheriff to the possession of Tolosano and prior to the trial and the rendition of judgment in the claim and delivery action, one Harry Crowe, through his attorney, J. W. Wright, who was also attorney for Tolosano in the action in replevin against the plaintiff herein, brought an action against Tolosano and in said action caused a writ of attachment to issue and the same to be levied on said tractor, which was thereupon stored by the sheriff in the warehouse of the Crowe Hardware Company at Tulare; that a

short time thereafter said attorney, J. W. Wright, brought in his own behalf an action against Tolosano, and obtained judgment therein and caused execution to be issued thereon and levied on the tractor in dispute; that, at the sale of the tractor under the said writ of execution, said J. W. Wright, first satisfying the judgment in the attachment suit of said Harry Crowe against Tolosano, bought the tractor; that subsequently Wright sold the tractor to one Hugh Pennybaker and gave the latter a bill of sale therefor; that, before, but on the day the sale of the tractor was completed, Bisconer, at Pennybaker's request, examined· the machine to ascertain whether it was in good condition, and, after the sale was effected, assisted Pennybaker in the removal thereof to the latter's ranch.  As to this circumstance, plaintiff herein testified that in the month of October, 1921, while Pennybaker was negotiating with Wright for the purchase of the tractor, he, at the request of the former, went to the Crowe Warehouse, where the tractor was then stored, to "look over the tractor and examine it as to its condition; that Mr. Pennybaker bought the tractor that day," paying Wright the sum of $500 therefor; that Pennybaker then requested plaintiff (Bisconer) to employ someone for him to move the machine to his (Pennybaker's) farm at Exeter; that Pennybaker gave him (plaintiff herein) $20 to pay the party employed by him for that purpose; that he employed one Al Bearce "to haul it and saw to the loading of it and paid Al Bearce the $20 given me by Pennybaker for that purpose."  This testimony by plaintiff was corroborated by Pennybaker.  Plaintiff further testified that he bought the tractor at an auction sale conducted by one Pete Robinson and had it in his possession but a few days when it was taken possession of by the sheriff in the replevin suit brought against him by Tolosano; that he had never used it; that, when he examined the tractor at the Crowe Warehouse at the request of Pennybaker, it was covered with dirt; that he had not seen it from about the tenth day of March, 1921, until he saw it at the Crowe Warehouse in October, 1921; that he did not recognize the tractor at the Crowe Warehouse on the last-named date as the one which he had purchased at the auction sale; that,·inasmuch as the claim and delivery suit had not then been tried, he supposed or assumed that the tractor. so purchased by him and which was

March, 1925.]     BISCONER *v.* BILLING.          783

taken from his possession by the sheriff under the writ of replevin issued in said action was still in the possession of Tolosano, to whom, as seen, the possession thereof was delivered by the sheriff; that no one had ever informed him that the tractor on sale at the Crowe Warehouse and which Pennybaker bought was the tractor the right to the possession of which was still bound up in the then untried action of claim and delivery by Tolosano against him.

There was received at the trial other testimony than that above referred to, but it was directed only to the identification of the tractor sold by Wright to Pennybaker as the tractor involved in this dispute, as to which, however, there is no serious, if any, controversy between the parties hereto.

Upon the special defense the court found as follows: "That it is true that during the pendency of the action mentioned and alleged in plaintiff's complaint herein, and before the entry of judgment therein, the plaintiff in this action Raymond Bisconer, took possession and assumed control of the Sampson Sieve Grip Tractor mentioned and described in plaintiff's complaint, for the purpose of effecting a sale and delivery thereof, and did, while so having possession and control of said tractor, assist and co-operate in effecting a sale and delivery thereof, to one Hugh Pennybaker."

The theory of the decision of the trial court, as is readily to be seen, is in accord with that of the special plea in bar set up by defendants, to wit: That Bisconer was a party to the transaction resulting in the sale of the tractor by Wright to Pennybaker, and assisted in delivering it to the possession of the latter; that, being a party to the act of removing the tractor from the possession of Tolosano, so that it was placed beyond the power of the latter to comply with the terms of his undertaking in the claim and delivery action requiring a return of the tractor to Bisconer in case judgment passed in said action in his favor, he (Bisconer) is estopped from maintaining the present action against the sureties on Tolosano's undertaking.

Assuming that the findings support the judgment, as to which there is serious doubt, it is clear that the evidence does not support said findings.

[1] It is a general rule, within which the case here obviously falls, that there can be no estoppel *in pais* where the party against whom the attempt is made to invoke such es-

toppel does not know the full truth of the facts to which his conduct, declarations or representations constituting the basis of the alleged estoppel relate. (10 Cal. Jur., p. 632, sec. 17; *Eaton* v. *Wilkins,* 163 Cal. 742 [127 Pac. 71]; *Puterbaugh* v. *Wadham,* 162 Cal. 611 [123 Pac. 804]; *Bashore* v. *Parker,* 146 Cal. 525 [80 Pac. 707]; *Davis* v. *Winona Wagon Co.,* 120 Cal. 244 [52 Pac. 487]; *Murphy* v. *Clayton,* 113 Cal. 153 [45 Pac. 267]; *Ions* v. *Harbison,* 112 Cal. 260 [44 Pac. 572]; *Bigelow* v. *Ballerino,* 111 Cal. 559 [44 Pac. 307]; *Wood* v. *Blaney,* 107 Cal. 291 [40 Pac. 428].)

[2] There is not a particle of evidence to be found in the record before us showing or tending to show that, when he examined the tractor for Pennybaker before the latter completed the negotiations with Wright for the purchase thereof, or later, when he assisted in the removal of the tractor to Pennybaker's ranch, Bisconer recognized the machine as the one which had been taken from his possession by the sheriff under the writ of replevin and by that officer delivered into the possession of Tolosano or knew that it was the same tractor. As seen, Bisconer testified that when he examined the tractor for Pennybaker or when assisting in taking it to the latter's ranch, he did not recognize or identify it as the tractor concerned in the replevin suit. He supposed, he said, that the tractor taken from him by the sheriff was still in the possession of Tolosano. This testimony of Bisconer was not contradicted. One Curtis, a witness for the defendants—a mechanic, and, as he called himself, a "tractor repair man"—testified that, on June 13, 1923, the day on which the trial of this action was begun, he went to the Pennybaker ranch and there inspected the Sampson tractor "that had been purchased by Mr. Pennybaker. Upon examination," he continued, "I found it to be the identical *type* of tractor that I had seen at the Crowe Warehouse in the fall of 1921, and the same *type* and character of tractor which I repaired three years ago on the Tolosano ranch. I observed the number of the tractor and it was 30x420." Undoubtedly, the purpose of this testimony was to show by inference that the tractor purchased by Pennybaker from Wright could be identified by one familiar with it as the tractor taken from Bisconer under the writ of replevin, and that, therefore, Bisconer, when inspecting it for Pennybaker,

must have recognized it as the tractor involved in the replevin action. But it will be noted that Curtis did not say that the tractor he saw at the Pennybaker ranch was the same tractor he had previously seen at the Crowe Warehouse or had worked on at the Tolosano ranch. His statement was that the tractor at Pennybaker's was the "same type and character" of tractor that he had previously seen or had previously done repair work on at the Tolosano ranch. Thus it is to be noted that if the purpose of Curtis' testimony was such as it is above suggested that it was it falls far short of reaching the mark. In other words, it does not justify the inference that Bisconer, on examining the tractor for Pennybaker, or when assisting in its removal to the latter's ranch, must have known that the tractor was the one taken from him by the sheriff in the claim and delivery action. To the contrary, the most reasonable view of that testimony is that, since Curtis, himself a mechanic, who had worked on the tractor, could go no further than to say that the tractor he saw at the Pennybaker ranch was of the *same type* of tractor as the one he had previously worked on at the Tolosano ranch, it is hardly reasonable to assume or infer that Bisconer, who had had possession of the replevied tractor but four or five days and had never worked or used it before it was seized by the sheriff in the replevin suit, could have said any more than that upon the question whether the tractor bought by Pennybaker from Wright was the same tractor which the sheriff had taken from him. Unquestionably, it was true then, as doubtless it is true now, that there are many Sampson tractors of the same type and character as the one with which this controversy is concerned. Moreover, Bisconer, as was perhaps true of Curtis, did not inspect or examine the tractor at the time of its sale to Pennybaker, with his mind charged with any thought or supposition that the tractor sold by Wright to Pennybaker was the identical engine that was taken from him by the sheriff in the replevin action. He examined the tractor on the occasion of the sale thereof to Pennybaker with his mind free from any reason or motive for identifying it with the tractor involved in the replevin suit. Curtis, as may well be supposed, examined the Pennybaker tractor with the special view and purpose of giving testimony for the defendants in the present case tending to prove that the tractor sold to Pennybaker was the

71 Cal. App.—50

tractor seized in the replevin suit. At any rate, it is quite manifest, as before declared, that, while Curtis' testimony no doubt tended to show that the Pennybaker tractor was the tractor involved in the claim and delivery action, it did not tend to show that Bisconer so recognized or identified it at the time of his inspection of it for Pennybaker.

The above is decisive of this appeal in favor of the plaintiff herein. But the record here discloses what well may be characterized as an anomalous situation, and it will do no harm to consider whether, instead of Bisconer, Tolosano and his attorney in the action in claim and delivery were not themselves responsible for the loss by Tolosano of the physical possession of the tractor. As shown above, J. W. Wright, according to his own testimony, was the attorney for Tolosano in the claim and delivery action. In that action Tolosano secured possession of the tractor from the sheriff upon the undertaking which is the basis of the present action. Tolosano was at that time residing on the ranch of one Meador, whether the party of that name who became, was, and is one of the sureties on his (Tolosano's) undertaking, the record does not show. Tolosano, so his wife and son testified, upon being given possession of the tractor by the sheriff, took the machine to the ranch of said Meador, where it remained until his (Tolosano's) attorney, J. W. Wright, brought suit against his client (Tolosano) in behalf of Harry Crowe, in which action a writ of attachment was issued and by the sheriff or some other officer legally authorized to execute the writ levied upon the tractor, which was thereupon and thereunder taken possession of by the officer and removed from the Meador ranch to the Crowe Warehouse at Tulare. Thereafter said J. W. Wright, for and in behalf of himself, brought an action against his client in the replevin suit, J. Tolosano, and therein obtained judgment upon which an execution was issued and levied on the tractor, the same sold under said execution to said J. W. Wright, the judgment creditor in said action, he having satisfied the judgment in favor of Harry Crowe against Tolosano and so removed the lien of Crowe's attachment on the tractor, if any such lien ever legally attached or could so attach to the tractor under the circumstances then existing as to said property. Thereafter, as seen, Wright sold, or attempted

to sell, the tractor to Pennybaker. This proceeding from beginning to end was peculiar, to say the least of it.

[3] Although not necessary to the decision of this appeal, as we have above pointed out, nevertheless these considerations may well be suggested as being worthy of thought in the event of a retrial of this case: Tolosano upon taking possession of the tractor from the sheriff, by virtue of his undertaking, acquired the right to the possession thereof and nothing more, and the property, while in his possession under his undertaking, no less than when in the possession of the sheriff by virtue of the writ of replevin, was *in custodia legis*. The plaintiff's custody was "substituted for the custody of the sheriff. The property is not withdrawn from the custody of the law. In the hands of the claimant, under the bond for its delivery to the sheriff, the property is as free from the reach of other processes as it would have been in the hands of the sheriff." (*Hagan* v. *Lucas,* 10 Pet. (U. S.) 400 [9 L. Ed. 470, see, also, Rose's U. S. Notes]; *Hunt* v. *Robinson,* 11 Cal. 262, citing *Hagan* v. *Lucas, supra; Riverside Portland Cement Co.* v. *Taft et al.,* 192 Cal. 643 [221 Pac. 357].) It was, therefore, the duty of Tolosano to keep the tractor in his custody and to allow no one to divest him of the possession thereof upon any pretense or pretext whatsoever. This is what his sureties promised and undertook that he would do, so that if he was cast in the replevin action, the return of the tractor to Bisconer would be forthcoming, or, further, if they (the sureties) were compelled to pay the value of the property because of its not being in the same condition in which it was when seized and, for that reason, well grounded, Bisconer refused to retake it, they could be awarded possession thereof as in recoupment, at least, of the money paid by them to Bisconer in satisfaction of the judgment. [4] It follows that, in surrendering his possession of the tractor in response to the exactions of the writ of attachment in the Crowe case against him, Tolosano, under the circumstances here appearing, was guilty of a flagrant violation of his engagement, not only to Bisconer, but to the sureties on his undertaking, to retain possession of the tractor. Indeed, the deprivation of that possession, even under or by virtue of the writ of attachment, constituted a wrongful dispossession and a trespass, and Tolosano or his sureties, by proper process in the re-

plevin suit, could have retaken the tractor from the officer seizing it under the writ of attachment or from any other person having its possession by virtue of said writ. (See cases above cited and also *Rhines* v. *Phelps*, 3 Gilm. (8 Ill.) 455; *Pipher* v. *Fordyce*, 88 Ind. 436; *McKinney* v. *Purcell*, 28 Kan. 446; *Acker* v. *White*, 25 Wend. (N. Y.) 614; 34 Cyc., p. 1458.) Of course, it would be idle to maintain that Tolosano did not know that the tractor had not been taken from him under the writ of attachment. And there is some evidence that his sureties, the defendants herein, had knowledge of the dispossession. Certainly, Tolosano's attorney in the replevin suit, J. W. Wright, not only knew that the tractor had been removed from the possession of Tolosano, but knew that such taking was wrongful and without legal force. It may be that Wright, before instituting actions against Tolosano in which the processes referred to were issued and used as the pretexts for depriving Tolosano of possession of the tractor, might have withdrawn as attorney for the latter in the claim and delivery action. His testimony does not show whether such was the case, nor does the record anywhere show it. But, assuming that he did, the situation is in no sense changed. The wrongfulness or illegality of the act of taking the tractor under the indicated circumstances is not removed from the transaction.

For the reasons first above given, the judgment must be reversed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.