VILLAR & Co., INC., Plaintiff and Appellee, *v.* ELOF HANSSON, Defendant and Appellant.

No. 4773.  Argued May 23, 1929.—Decided December 16, 1929.

*Carlos J. Torres* and *Rafael Buscaglia,* for appellant.  *R. Cuevas Zequeira,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Villar & Co., Inc., of this Island, brought an action in the District Court of San Juan against Elof Hansson, a merchant of Sweden, claiming thirty thousand dollars as damages for breach of a contract, by virtue whereof the defendant undertook to sell to the plaintiff two thousand tons of fertilizer at

thirty three dollars per ton, the fertilizer to contain 12 per cent ammonia, 6 per cent phosphoric acid and 5 per cent potash, whereas the amount delivered contained only 6.80 per cent ammoniacal nitrogen, 4.36 per cent phosphoric acid and 5.36 per cent potash, which rendered said fertilizer unfit for the use to which it was destined.

After filing the complaint, and in accordance with the applicable Act of 1902 as amended by Act No. 27 of 1906, the plaintiff moved for an attachment to secure the effectiveness of the judgment that might be rendered in the action. The court granted the motion conditioned upon the giving of a fifteen thousand dollar bond. Thereupon the plaintiff furnished the required bond and designated as property subject to attachment, which the marshal attached as belonging to the defendant, "the shipping documents (bills of lading, drafts, invoices, etc.), draft No. 1789 for $6,578.21, another draft for $6,970.35, and other drafts in the possession of the San Juan branch of The Royal Bank of Canada; one thousand sacks of fertilizer 'San Miguel Brand' unloaded in this city from S. S. Vesta, which sacks are marked with the label 'Fertilizer San Miguel Brand, made in Holland' and are deposited in the customhouse."

The copy of the order of attachment served on the Collector of Customs of San Juan was returned by that officer with the statement that he was unable to comply with the order, because according to the law "all property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable and that all such property so taken or detained shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."

As regards the attachment of the documents held by the bank, there was no objection on the part of the latter.

At this stage of the proceedings, the defendant appeared on June 25, 1928, and filed a motion to dissolve the attach-

ment. On the same day plaintiff moved the court to make an order directing as follows:

"1.—That the Marshal of the District Court deliver to the Collector of Customs of San Juan the shipping documents relating to the six hundred tons of fertilizer consigned by Elof Hansson to Villar & Co., Inc., in order to prevent the said Collector of Customs from enforcing the bond given by Villar & Co., Inc., since otherwise any judgment rendered herein by this court would become illusory and no practical purpose would be served by the order of attachment obtained by plaintiff through the furnishing of a bond.

"2.—That the Marshal of the District Court, pursuant to the delivery to the Collector of Customs of San Juan of the shipping documents relating to the one thousand sacks of fertilizer manufactured by Elof Hansson for San Miguel Bros. of Bayamón, P. R., take possession of said goods.

"3.—That by reason of the shrinkage and deterioration to which the one thousand sacks of fertilizer above mentioned are liable, the Marshal of the District Court sell them publicly and deposit the proceeds thereof in the office of the Clerk of this Court to abide the result of the action herein."

The defendant opposed plaintiff's motion and the court set down both motions for hearing on July 13, 1928, on which date the parties appeared and evidence was introduced, over the objection of the plaintiff. The following incident occurred according to the record:

"Defendant.—Your Honor, the parties herein stipulate as follows: That all the fertilizer referred to in the present suit and especially in the motions of the plaintiff and of the defendant heard today, was withdrawn by Villar & Co., Inc., from the Customhouse of Porto Rico, prior to the levying of the attachment, on a provisional bond conditioned upon the presentation of the bill of lading; except as regards the one thousand sacks of fertilizer billed to San Miguel Brothers, of which mention is made in plaintiff's motion.

"And with reference to the said one thousand sacks of fertilizer billed to San Miguel Bros., the parties admit that such sacks are actually located at present in said Customhouse."

The court decided the motions as follows:

"The motion of the defendant Elof Hansson dated June 25, 1928, to dissolve the attachment is overruled, because after a consideration thereof and of the evidence heard, the court is of the opinion that the bill of lading and consular invoices, which are symbolic representatives of property, are objects of human commerce and therefore subject to attachment; and,

"Upon consideration of the motion of the plaintiff Villar & Co., Inc., dated June 25, 1928, the court sustains the same in so far as it is therein prayed—and it is so ordered—that the marshal, through the delivery of the shipping documents corresponding to the one thousand sacks of fertilizer billed by Elof Hansson to Successors of San Miguel Brothers, of Bayamón, P. R., and now in the San Juan Customhouse, take possession of this merchandise, to hold and deposit the same subject to the further order of this court; and the said motion is overruled in so far as it is therein prayed that delivery be made to the Collector of Customs of the documents relating to the six hundred tons of fertilizer which had been withdrawn by Villar & Co., Inc., until the marshal gets possession of the said goods through delivery thereof by the plaintiff."

The defendant has appealed from the above decision and assigned several errors, as follows:

"The court erred in finding that the attachment levied by the marshal on the bills of lading and consular invoices is valid.

"The court erred in holding as valid the attachment levied on the bills of lading relating to the 600 tons of fertilizer disposed of by the plaintiff-appellee, since at the time of the levy said documents did not represent property liable to attachment.

"The court erred in ordering the marshal to take possession of the 1,000 sacks of fertilizer in the custody of the Collector of Customs through delivery of a bill of lading, which had been unlawfully attached."

The appellee opposes the foregoing contentions, which it discusses together in its brief, as follows:

"The goods attached in this case constitute property subject to attachment, as they have the character of 'property' within the definition of the term in the Civil Code. According to section 324 of that code, the word 'property' (*bienes*), applies in general to anything of which riches or fortune may consist, and it is also

related to the word 'things', which is one of the objects of jurisprudence.

"Incorporeal things, which consist only in a right, are also considered as property, either real or personal; under section 331 of the Civil Code. And according to section 341, contracts for public services, and bonds or obligations representing mortgage loans, among others, are personal property; while section 343 provides that all things corporeal or incorporeal, which are not immovables by nature or by provision of law, shall be considered as movables.

"In the light of the above precepts bills of lading and consular invoices, which are symbolic representatives of property, like mortgage bonds or other obligations, are personal property, the object of human commerce, and hence subject to attachment, since the Act to secure the effectiveness of judgments, when providing in subdivision (*b*) of section 2 thereof that the provisional remedy (*aseguramiento*) shall consist of the attachment of *sufficient property* of the debtor, has made no distinction, and the provisions of the Civil Code relating to the classification of property apply.

"Section 708 of the Code of Commerce reads as follows:

" 'Bills of lading issued to the bearer and sent to the consignee shall be transferable by the actual delivery of the instrument; and those issued to order by virtue of an indorsement.

" 'In either case, the person to whom the bill of lading is transferred shall acquire all the rights and actions of the assignee or indorser with regard to the merchandise mentioned therein.'

"Besides, it is clear from the jurisprudence that bills of lading constitute property subject to attachment:

" 'By mercantile law and usage a bill of lading stands as a substitute and symbolic representative of the goods therein described, and possession symbolized by a bill of lading is the same as actual possession.' 10 Corpus Juris 193, St. Louis Merchant's Nat. Bank v. Shaw, 101 U. S. 557, 25 L. ed. 892.

"In the case at bar the bills of lading and other documents attached by the marshal are in the nature of orders of payment, since by virtue of their delivery to the Collector of Customs said officer would cease to have authority to enforce the bond furnished by the consignee when withdrawing the goods shipped by Elof Hansson.

"The legal question raised can be determined with all clearness by merely applying the legal principles in force in Porto Rico embodied in the Civil Code, the Code of Commerce and the Act to secure the effectiveness of judgments, which is an equitable statute

and has the effect of protecting the rights of a person, who sues for the performance of an obligation and furnishes the bond required by the court as a condition for granting the provisional remedy sought. Both parties submitted themselves to the jurisdiction of the District Court of San Juan. The defendant is protected by the bond and by the domestic status of the plaintiff corporation; whereas if the lower court had not protected plaintiff's rights, the order to secure the effectiveness of the judgment would have been altogether ineffective.''

The reasoning of the appellee is logical and would be entirely acceptable, but for the concurrence of the circumstances present in the case herein.

There is no doubt that some of the goods to which the attached documents refer are at present in the customhouse and the others were withdrawn therefrom by plaintiff itself, consignee of the goods, by furnishing a bond conditioned upon the subsequent presentation of the required documents, which are among those attached.

The fertilizer in the customhouse could not possibly be attached. The appellant invokes in this connection the following jurisprudence, which seems to us conclusive:

''(a) Property in custody of the law is not subject to attachment. 12 L.R.A. 508; 48 Cal. App. 329; 88 Cal. 522; 49 Cal. App. 570.

''(b) All property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof. Sec. 934 of the U. S. Revised Statutes.

''(c) Merchandise in bonded warehouses is subject only to the orders and decrees of the United States courts. It is not subject to levy, attachment or other process of the State courts. Art. 850 of the Customs Regulations prescribed for the Instruction and Guidance of the Customs Officers, 1923 ed. Treasury Decisions 16693–16896–17188–17720–1934.

''(d) Hawaii and Porto Rico are Customs Collection Districts and are subject to all the provisions of the Customs Laws of the United States. Act of April 30, 1900, sec. 88; Act of April 12, 1900, sec. 4. Treas. Dec. 19668–24198–24692–37341.

"(e) The rule is broadly stated that personal property in the custody of the law is not subject to attachment. 1 Cal. Jur. par. 20; Aynes v. Willis, 3 Cal. App. 234."

A direct levy of the attachment being impossible, may resort be had to the indirect means employed by the plaintiff herein to actually carry out that which is forbidden by the law and the jurisprudence?

On this particular point, we should have liked to have the assistance of the learned counsel for the appellee. Until the contrary is shown to us, we will hold to the view that in good practice recourse can not be had to indirect means in order to attain something which can not be secured directly, when the ultimate purpose sought to be accomplished is contrary to law.

The foregoing considerations are sufficient to justify the conclusion we have reached that the first and third errors assigned were committed.

The second assignment of error must also be sustained.

The plaintiff, of its own accord, by furnishing a bond, withdrew from the customhouse, as we have already stated, the goods consigned to it by the defendant, and undertook to deliver subsequently the required documents, thus taking possession of the goods and depriving the defendant in that way of his control over them; and it has been held that "the attachment of property in the possession of plaintiff can not be levied." *Bisconer* v. *Billing,* 71 Cal. App. 779. The Supreme Court of California in *Howell* v. *Foster,* 65 Cal. 169–173, cited with approval the opinion of the text-writer Drake, as follows:

"'It is a fundamental principle,' says Drake on Attachment, section 245, 'that an attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in or power over it as to permit him to dispose of it adversely to others, it cannot be attached for his debt.'

310

By virtue of the foregoing, the order appealed from must be reversed and another rendered instead dissolving the attachment levied.